**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

THOMAS TEMPLETON,

    **Plaintiff,**

    v.

TIM BRANDT, et al.,

    **Defendants.**

Case No. 1:20-cv-34
JUDGE DOUGLAS R. COLE

**OPINION AND ORDER**

    This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 5). The case arises out of events that occurred when Deputy Tim Brandt, a Lawrence County, Ohio Sheriff's deputy—who is one of the two named defendants—arrested the plaintiff, Thomas J. Templeton, for disorderly conduct. According to the Complaint, Templeton was the "mayor and the chief law enforcement officer for the Village of Chesapeake, Ohio [which is located in Lawrence County]." (Compl., Doc. 1, ¶ 11, #3). The other defendant is Jeff Lawless, the Sheriff of Lawrence County, who allegedly also had some personal involvement in the events at issue. Based on those events, Templeton filed a nine-count Complaint, including five counts under § 1983 (Counts I, III, IV, V, and VII), which he asserts against Brandt and/or Lawless, apparently in both their individual and official capacities, and four Ohio state-law claims (Counts II, VI, VIII, and IX) against one or both of those same defendants.

    Defendants have now moved to dismiss all counts except Count II (a claim asserting that Defendants violated Templeton's rights under the Ohio Constitution's free-speech clause). As to the five § 1983 counts, Defendants press various

arguments, but many seem to rest largely on the flawed premise that Templeton is pursing only official-capacity claims. But, as both Templeton's Complaint and Motion in Opposition reveal, he is not. And thus Defendants' arguments predicated on that assumption fall short. Accordingly, as more fully explained below, with one limited exception, the Court **DENIES** the Motion to Dismiss as to the § 1983 counts (Counts I, III, IV, V, and VII).

Defendants fare better, however, with their attacks on Templeton's state-law claims. In particular, Defendants moved to dismiss three of the four state-law claims (i.e., all claims except Count II) on statute-of-limitations grounds. Templeton elected not to respond to those arguments. Thus, the Court **GRANTS** the Motion to Dismiss as to the three state-law claims (Counts VI, VIII, and IX).

## BACKGROUND

For purposes of a motion to dismiss, the Court accepts as true the factual allegations in the Complaint. Thus, the Court reports, and relies on, those allegations here, but only with the disclaimer that these facts are not yet established.

**A.    Brandt Arrested Templeton For Disorderly Conduct.**

The suit arose out of events that occurred on August 29, 2018. At that time, Templeton, who is the "mayor and chief law enforcement officer for the Village of Chesapeake, Ohio," was at his personal residence inside municipal limits. As Templeton tells it, Templeton and his neighbors were having an "on-going issue" with one of his neighbors, Eugene Rodebaugh, about a dog that Rodebaugh owned. (Compl., Doc. 1, ¶ 13, #4). The dog barked. A lot. On August 29, 2018, Templeton had

2

enough. He sent a text message to a village police officer, Matthew Chinn, asking him to go to Rodebaugh's home to address the barking dog. Chinn did so, and Rodebaugh agreed to put the dog inside. (*Id.* at ¶¶ 14–16, #4).

Once Chinn left, though, Rodebaugh put the dog back outside. The barking soon commenced anew. (*Id.* at ¶ 17, #4). So Templeton responded with another text message to Officer Chinn. (*Id.* at ¶ 18, #4). This time, though, when Chinn arrived to talk with Rodebaugh, Rodebaugh claimed that Templeton had threatened him. (*Id.* at ¶ 19, #4). As a result, Rodebaugh told Chinn that Rodebaugh wanted to file a criminal complaint against Templeton. Chinn, recognizing a conflict of interest as he reported, at least indirectly, to Templeton as Mayor, radioed the dispatcher and asked the dispatcher to request help from the Lawrence County Sheriff's Office. (*Id.* at ¶ 21, #4).

Brandt, a Lawrence County Sheriff's Deputy, arrived shortly thereafter. By the time Brandt appeared, Templeton was back in his own house. Brandt spoke to Rodebaugh, and another neighbor, Ashley Mullins. He then went to Templeton's house, and asked Templeton to step onto his front porch. (*Id.* at ¶¶ 23–25, #4–5).

Once Templeton was on the porch, Brandt allegedly berated him, asking "What the f*** is your problem?" (*Id.* at ¶¶ 26, 27, #5). Brandt further asked Templeton why he was "acting like a goddamned child." (*Id.* at ¶ 27, #5). When Templeton tried to identify himself as the Mayor and chief law enforcement officer for the Village, Brandt replied, "I know who you are." (*Id.* at ¶ 28, #5). Fearing things were escalating, Templeton told Brandt that he (Templeton) "could not be arrested for enforcing a

3

village ordinance." (*Id.* at ¶ 29, #5). But Brandt responded that, "this is my county and you don't know the law." (*Id.* at ¶ 30, #5).

Brandt then arrested Templeton. Brandt said it was "for disorderly conduct due to [Templeton's] behavior towards [Rodebaugh] in front of Officer Chinn and [Templeton's] remarks that he would not stop such behavior after being repeatedly asked to do so." (*Id.* at ¶ 32, #5). Brandt had not personally witnessed any of this alleged behavior. (*Id.* at ¶ 33, #5–6).

After arresting Templeton, Brandt placed him in the back of the police vehicle. When Templeton's mother approached and asked what was happening, Brandt responded "he thinks he's God and I'm going to teach him a lesson." (*Id.* at ¶¶ 36–37, #6). Brandt then began transporting Templeton to the Lawrence County Jail. Along the way, Brandt called Sheriff Lawless about the events. Brandt relayed to Templeton that the Sheriff was willing to allow Templeton to return home in exchange for Templeton agreeing not to speak to Rodebaugh anymore. (*Id.* at ¶ 39, #6). Templeton declined the offer. (*Id.* at ¶ 40, #6).

Upon arriving at the jail, Templeton was booked on a minor misdemeanor disorderly conduct charge. (*Id.* at ¶ 41, #6). Templeton was released on a recognizance bond later that day. (*Id.* at ¶ 44, #6). The county prosecutor ultimately decided to resolve the matter by entry of a *nolle prosequi*. (*Id.* at ¶ 45, #6).

**B. Templeton Sued, Asserting § 1983 And State-Law Claims.**

About seventeen months later (more on that below), Templeton filed this suit. As noted above, he asserts five separate counts under § 1983. Three of those, Counts

4

I (restraint of speech in violation of the First and Fourteenth Amendments), IV (unlawful arrest and seizure under the Fourth and Fourteenth Amendments), and V (false imprisonment under the Fourth and Fourteenth Amendments), he asserts against *both* Brandt and Lawless. (*Id.* at #7, 10, 11). A fourth, Count III (excessive force in violation of the Fourth and Fourteenth Amendments), he asserts solely against Brandt. (*Id.* at #9). And the remaining § 1983 count, Count VII (failure to train resulting in violations of the Fourth Amendment), he asserts solely against Sheriff Lawless. (*Id.* at #13). In the caption of his Complaint, Templeton indicates that he is suing Defendants in both their individual and official capacities. (*See id.* at #1). The actual counts, however, do not say anything one way or the other on that front.

The remaining four claims are state-law claims. The three at issue in the motion to dismiss are: (1) Count VI (false imprisonment), which Templeton asserts against both Brandt and Lawless; (2) Count VIII (assault and battery), which Templeton asserts against only Brandt; and (3) Count IX (intentional infliction of emotional distress), which he asserts against both defendants. (*Id.* at #12, 14, 15).

C.  **Defendants Moved To Dismiss Eight Of The Nine Counts.**

In their Motion to Dismiss (the "Motion," Doc. 5), Defendants address the § 1983 counts separately from the state-law counts.[1] As to the § 1983 counts, Defendants make essentially three arguments. First, as to all but Count VII, they

---

[1] That being said, their briefing seems to muddle the two a bit. In particular, Defendants begin the portion of the brief labeled "State Law Claims" with their attacks against Count IV, a § 1983 claim. (*See* Motion at #36). The Court treats their arguments in that section as directed against the federal claim.

5

argue that Templeton has failed to allege the facts necessary to assert liability against the county for the conduct of Brandt and Lawless under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 700–01 (1978). (Motion at #33–34). Second, as to Count VII (failure to train), they claim that Templeton has failed to allege the "pattern of similar constitutional violations" necessary to make out such a claim. (*Id.* at #34–36). Finally, Defendants launch an additional attack on Count IV, claiming that the Fourth Amendment does not bar warrantless arrests for minor misdemeanors. (*Id.* at #36–37). Thus, they say, even if arresting Templeton for a minor misdemeanor may violate *Ohio* law, Brandt did not violate the Fourth Amendment, and thus a § 1983 claim predicated on that arrest fails as a matter of law. (*Id.*).

Defendants also argue that the Court should dismiss three of the four state-law claims for two reasons. First, they assert that the County is immune from liability for its employees' alleged misconduct. (*Id.* at #37–39). Second, they claim that each of the three state-law counts (i.e., other than Count II, which they don't address) is barred by the statute of limitations. (*Id.* at #39–42).

The matter is now fully briefed and before the Court.

## LEGAL STANDARD

At the motion to dismiss stage, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [Templeton]

6

must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted).

In making that determination, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation omitted). That is so, however, only as to factual allegations. The Court need not accept as true Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," such that the asserted claim is "plausible on its face." *Iqbal*, 556, U.S. at 678; *Twombly*, 550 U.S. at 546–47. Under the *Iqbal/Twombly* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a threshold level of factual plausibility before defendants are subjected to the potential rigors (and costs) of the discovery process. Discovery, after all, is not meant to allow a plaintiff to discover whether he has a claim, but to provide a process for discovering evidence to substantiate an already plausibly-stated claim.

## LAW AND ANALYSIS

Neither the Complaint nor the Motion to Dismiss in this matter is a model of clarity. To start, while the Complaint directs the five § 1983 counts at one Defendant or the other (or, in most cases, both), it neglects to expressly identify whether Templeton is suing Defendants in an individual capacity, an official capacity, or both,

7

as to a given count. That matters because, as discussed below, the legal standards are different for the two types of claims. Rather than address both possibilities, Defendants' Motion to Dismiss further compounds the problem, opting to treat the claims solely as official-capacity claims, without discussing why that is the case. As a result, there is something of a two-ships-passing-in-the-night problem that complicates the Court's review of the Motion to Dismiss. Fortunately, the Court's job is easier on the state-law claims. Defendants moved to dismiss three of the four state-law counts, and Plaintiff elected not to defend those claims.

**A.  The Court Denies The Motion To Dismiss The § 1983 Counts.**

Section 1983 does not provide a substantive right, but rather is a vehicle for remedying violations of other rights. More specifically, § 1983 allows a party to bring "an action in law, suit in equity, or other proper proceeding for redress," against any "person who, under color of [state law]" deprives the party of any rights "secured by the Constitution and [federal] laws." 42 U.S.C. § 1983. In other words, to succeed in a § 1983 action, the plaintiff must show that the defendant(s) violated a right bestowed on the plaintiff by federal law, and that the defendants did so while acting "under color of" state law.

Plaintiffs can sue a party under § 1983 either in that party's individual capacity, official capacity, or both. As the title suggests, an individual-capacity claim is directed against the person him or herself, and the liability for the conduct would extend only to that person. An official-capacity claim under § 1983, by contrast, is really a claim against the individual's employer. *Curtis v. Breathitt Cnty. Fiscal Ct.*,

8

756 F. App'x 519, 525 (6th Cir. 2018) ("An official capacity claim filed against a public employee generally represents another way of pleading an action against the public entity that agent represents.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). So, for example, if a plaintiff were to sue a county law-enforcement officer in the officer's official capacity, that is for all intents and purposes merely a suit against the county itself. *Graham*, 473 U.S. at 166 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

In addressing official-capacity claims (i.e., claims against the entity), two considerations arise. First, there is the question of whether the employer entity counts as a "person," under § 1983. That matters because liability under the statute extends only to "persons." So, for example, at least in part because of Eleventh Amendment immunity issues, the Supreme Court instructs that the State or state-level entities (e.g., The Ohio State University) are not "persons" for purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Accordingly, an official-capacity claim against an agent of such an entity will not lie.

The Supreme Court has also held, however, that sub-state-level governmental entities, such as cities or municipalities, *are* persons for purposes of that section. *See Monell*, 436 U.S. at 690. And the Sixth Circuit has confirmed that this includes counties: "[m]unicipalities *and counties* are 'persons' exposed to litigation under section 1983." *Curtis*, 756 F. App'x at 525 (emphasis added). *See also Alkire v. Irving*, 330 F.3d 802, 814 (6th Cir. 2003) ("Unlike states, however, local governments, municipalities, and counties are considered 'persons' within the meaning of 42 U.S.C.

9

§ 1983, and 'may be sued for constitutional deprivations.'") (quoting *Monell*, 436 U.S. at 690–91). Accordingly, federal courts will recognize official-capacity claims against employees of such entities.

Even if the governmental employer at issue is a "person," though, that is not the end of the inquiry. That is because § 1983 does not provide for respondeat superior liability. *Monell*, 436 U.S. at 691. In other words, the mere fact that the entity employed the person who allegedly violated the plaintiff's federal rights does not mean that the entity itself will have liability for any resulting harm. Rather, liability extends to the governmental entity only if "the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.2005)). Absent that, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* (quoting *Monell*, 436 U.S. at 694). Accordingly, official-capacity claims are viable only if the plaintiff has plausibly alleged an illegal policy or custom.

The Court's task here, then, is to apply this settled legal framework to this case. Let's start with Defendants' first argument, which they press against Counts I,

10

III, IV, and V. As to these counts, Defendants contend that Templeton has failed to plausibly allege that he can meet *Monell*'s requirements. But, as described above, those requirements apply only to the extent that Templeton is pressing official-capacity claims. Accordingly, Templeton need not meet *Monell*'s requirements for his individual-capacity claims. Thus, the Court will not dismiss any of the individual-capacity claims against either Defendant in any of these four counts based on the *Monell* argument.

The analysis of the official-capacity claims is somewhat different. As noted, Lawrence County (which employed both Brandt and Lawless, and thus is the relevant entity for an official-capacity claim) is a person under § 1983. But, to hold the County liable, Templeton still must identify an "illegal policy or custom." As noted, though, one way in which he can do so is to show that an "official with final decision making authority [for the governmental entity] ratified illegal actions." *Burgess*, 735 F.3d at 478. Here, Templeton asserts three of the four counts at issue for this argument (Counts I, IV, and V) against both Brandt and Lawless. As Lawless is alleged to be the County Sheriff, he would at least plausibly constitute the "official with final decision making authority" for the County as to the law-enforcement activities at issue here. And based on the allegations in the Complaint, it is plausible that he "ratified" the conduct at issue in these counts. Thus, at least for present purposes, there is a plausible official-capacity claim based on Lawless's alleged ratification of the allegedly "illegal" actions. And, as the County can only be liable once, it does not really matter whether the official capacity claim is directed at Brandt or Lawless.

11

What matters is that Brandt's actions, and Lawless's ratification of those actions, plausibly give rise to a claim against Lawrence County.

Count III is a little different in this regard. As to that count, which is asserted solely against Brandt, the Court agrees with Defendants that Templeton has not sufficiently alleged an "illegal policy or custom" in connection with Templeton's alleged use of excessive force. That is, Templeton has not alleged in this count any illegal official policy or legislative enactment of using "excessive force"; that an official with final decision making authority ratified Brandt's "excessive force" as described in this count; the existence of a policy of inadequate training or supervision regarding the use of force (at least in this count, but see the discussion of Count VII below); or the existence of a custom of tolerance or acquiescence to officers violating federal rights through use of excessive force. In part, all of that may be because Templeton does not even clearly identify what constituted the allegedly "excessive force." In any event, however, to the extent Templeton is seeking to impose liability against the County for Brandt's allegedly "excessive force," (i.e., through an official-capacity claim against Brandt), the Court agrees that the official-capacity claim warrants dismissal.

In sum, based on Defendants' *Monell* argument, the Court **DENIES** the Motion to Dismiss as to Counts I, III, IV and V, to the extent those counts are pressed in Defendants' individual capacities. The Court further **DENIES** the Motion to Dismiss as to Counts I, IV and V, to the extent that they assert official-capacity claims. But, the Court **GRANTS** the Motion as directed against the official-capacity

12

claim against Brandt in Count III (i.e., Templeton's efforts to make the County liable under this Count for Brandt's alleged use of excessive force).

Separately, Defendants move to dismiss Count IV, which asserts unlawful arrest and seizure, on the grounds that the Fourth Amendment does not prohibit warrantless arrests for misdemeanors. (Motion at #36 (citing *Synek v. Brimfield Twp.*, No. 5:11-cv-774, 2012 WL 4483806 (N.D. Ohio Sept. 27, 2012))). Thus, they say, there is no Fourth Amendment violation for Templeton's arrest, and accordingly no § 1983 claim.

Not so fast. While the Court agrees that warrantless arrests for misdemeanors typically do not violate the Fourth Amendment, the Court is not convinced that is true on the facts here. Two reasons lead the Court to that conclusion.

First, a Supreme Court case on which Defendants rely observes that "warrantless arrests *for crimes committed in the presence of an arresting officer* are reasonable under the Constitution." *Virginia v. Moore*, 553 U.S. 164, 176 (2008) (emphasis added). Templeton alleges that the behavior at issue here did not occur in Brandt's presence. (*See* Complt., ¶ 33, #5 ("Deputy Brandt did not witness any of the exchange between Mr. Templeton and the neighbors.")). So, the Court is not yet convinced that the *Virginia v. Moore* rule applies with full force here.

Second, the warrantless arrest for a misdemeanor here appears to have occurred at Templeton's personal residence, or at least on the curtilage of that residence. Whatever rule applies to arrests for misdemeanors in public spaces, the Fourth Amendment analysis changes at a person's residence. According to the Sixth

13

Circuit, two Supreme Court cases, "*Payton* [*v. New York*, 445 U.S. 573 (1980)] and *Atwater* [*v. City of Lago Vista*, 532 U.S. 318 (2001)], taken together, clearly establish that warrantless in-home arrests for misdemeanor offenses absent consent or exigency violate the Fourth Amendment." *Denton v. Rievley*, 353 F. App'x 1, 6 (6th Cir. 2009). That rule at least arguably extends to the curtilage of the home, *see Tomasek v. City of Cleveland*, No. 1:13-cv-006, 2014 WL 346283, at *5 (N.D. Ohio Jan. 30, 2014), and "[t]he front porch is the classic exemplar" of curtilage, *Florida v. Jardines*, 569 U.S. 1, 1 (2013).

As neither party raised this issue in their briefing, the Court's ruling above is necessarily preliminary. At least for now, though, the Court concludes that Defendant's it's-not-unconstitutional-to-arrest-for-a-misdemeanor argument fails to justify dismissal of Count IV.

That leaves Count VII. In this Count, Templeton purports to assert a failure-to-train claim against Lawless predicated on Lawless ratifying Brandt's conduct. Defendants move to dismiss that Count on the grounds that Templeton has failed to allege a pattern of similar constitutional violations, which they say is a predicate to such a claim. (Motion at #35).

The Court is in a quandary on this one. Neither the substance of the Count, nor the argument against the Count, are entirely clear to the Court. "Failure to train" is not in and of itself a constitutional violation. Rather, a failure-to-train theory is one way in which a governmental entity can become liable for the actions of its agents. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Thus, for example, if Brandt

14

violated Templeton's constitutional rights, and Templeton wanted to collect damages against the County for that violation, one way in which Templeton could do so would be to show that Brandt's violation resulted from the County's failure to train Brandt.

But, it is not at all clear that Templeton would need to pursue that path on the allegations here. After all, another way in which the County could be liable is if an "official with final decision making authority [for the County] ratified [the] illegal actions [at issue]." *Burgess*, 735 F.3d at 478. And that is what Templeton alleges in Count VII here: "Defendant Lawless ratified Defendant Brandt and the conduct described herein by allowing him to arrest Mr. Templeton." (Compl., Doc. 1, ¶ 90, #13). Thus, whether or not the County failed to train Brandt seems largely irrelevant to the question of County liability here. Rather, the issue appears to be ratification. For present purposes, it is enough to say that the Court declines to dismiss the claim against the County.

Once further factual development has occurred, and the parties have appropriately briefed the issues raised above, the Court will be in a better position to determine the extent to which the County may, or may not, be liable for any harm that Brandt and/or Lawless may, or may not, have caused to Templeton.

To summarize, the Court **GRANTS** the Motion to Dismiss as to the official-capacity claim against Brandt in Count III. Other than that, the Court **DENIES** the Motion to Dismiss as to the § 1983 claims.

15

**B.     As The Statute Of Limitations Appears To Have Lapsed And Templeton Has Elected Not To Defend The Three State-Law Claims That Defendants Challenge, The Court Dismisses Those Claims.**

In addition to seeking dismissal of the § 1983 claims, Defendants also move to dismiss three of the four state-law claims (Count VI (false imprisonment); Count VIII (assault and battery); and Count IX (intentional infliction of emotional distress)). Although Defendants advance two arguments, the Court addresses only one here.[2] In particular, Defendants argue that the state-law claims are barred by the statute of limitations. As to that argument, not only does it appear that Defendants are correct, but Templeton has elected not to argue otherwise. Thus, for either, or both, of those reasons, the Court grants the motion to dismiss these three claims.

Start with Count VI, which asserts a claim for false imprisonment. Defendants point out that O.R.C. § 2305.11(A) provides the statute of limitations for that claim. According to that statute:

> An action for libel, slander, malicious prosecution, or false imprisonment … shall be commenced within one year after the cause of action accrued.

Ohio case law appears to confirm that the statute applies according to its plain language. (*See* Mot. at #40 (citing cases)). And the cause of action accrues on the date of the arrest. *May v. McGrath*, 2:11-cv-0839, 2013 WL 1401371, at *6 (S.D. Ohio Apr. 5, 2013).

Here, Templeton alleges he was arrested on August 29, 2018, and released that same day. Thus, the statute of limitations presumably expired one year from that

---

[2] In addition to their statute of limitations argument, Defendants argue that Count VI (the false imprisonment claim) fails to state a claim upon which relief can be granted, and that Defendants enjoy sovereign immunity with respect to these three intentional tort claims.

16

date, on August 29, 2019. Yet, Templeton did not sue until January 13, 2020, some five months after the statutory period lapsed.

To be sure, that is not necessarily fatal to Templeton's claim. For example, Templeton might have obtained a tolling agreement that prevented the limitations period from expiring. Alternatively, in some circumstances, estoppel may prevent a defendant from relying on a statute of limitations defense. *See Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1076–77 (S.D. Ohio 2016).

Templeton, however, makes no such argument here. Indeed, he makes no argument on the statute of limitations issue as to this claim at all. Hence, he has waived any such arguments he may have had, and the Court dismisses this claim. *See, e.g.*, *Lloyd v. Pokorny*, No. 2:20-cv-2928, 2020 WL 4455547, at *7 (S.D. Ohio Aug. 3, 2020) (citing cases).

The analysis is virtually identical for Templeton's assault and battery claim, which he sets forth in Count VIII. The statute of limitations for such claims is located in O.R.C. § 2305.111(B), and like the claim for false imprisonment, the statutory period for assault and battery claims is one year. The limitations period accrues on the date when the assault or battery occurred. *Id.* at (B)(1). That period can be tolled if the victim does not know the assailant's identity, and it does not apply to childhood victims of sexual abuse, *see id.* at (B)(2)(a)–(b), but neither exception applies based on the allegations in the Complaint here. And, again, Templeton has declined to argue that he met the limitations period, or that it should not apply for some reason. Accordingly, the Court likewise dismisses Count VIII.

17

The remaining state-law count, Count IX, which asserts an intentional infliction of emotional distress claim, is a little trickier from a statute of limitations standpoint. "Typically, the statute of limitations for a claim of intentional infliction of emotional distress is four years." *Lee v. Lucas*, No. 1:10-cv-151, 2011 WL 5361509, at *4 (N.D. Ohio Oct. 31, 2011) (citing *Crist v. Pugin*, No. 3:08-cv-501, 2008 WL 2571229, at *1–2 (N.D. Ohio June 25, 2008)). But, when the acts giving rise to the claim "would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress." *Id.* So, for example, if the intentional infliction claim arises out of a false imprisonment claim, the one-year statute of limitations for the latter would apply to the former. *Id. See also, e.g.*, *Brown v. Holiday Inn Express & Suites*, 118 N.E.3d 1021, 1025 (Ohio Ct. App. 2018) (applying one-year statute of limitations for battery claim to intentional infliction claim that arose out of the alleged battery). That makes sense, as otherwise a plaintiff could seek to evade the statute of limitations for the underlying tort by instead asserting that the claim sounds in intentional infliction of emotional distress.

Here, then, the same one-year statute of limitations that applies to Templeton's false imprisonment and assault claims also would apply to Templeton's intentional infliction claim, as the latter claim arises out of the same conduct as the former two. (*See* Compl., Doc. 1, ¶ 100, #15 (claiming intentional infliction for the same "acts and conduct of the Defendants")). Thus, Templeton's intentional infliction of emotional distress claim expired, absent some kind of tolling or other special circumstance, on August 29, 2019.

Again, there may be an argument for a different result on that issue. But, if there is, Templeton has not made it. Accordingly, any such argument is now waived. The Court thus **DISMISSES** each of the three challenged state-law claims (Counts VI, VIII, and IX), and does so **WITH PREJUDICE**.

## CONCLUSION

For the above-stated reasons, the Court **GRANTS** the Motion to Dismiss as to Counts VI, VIII, and IX (the challenged state-law claims). Similarly, the Court **GRANTS** the Motion to Dismiss with respect to Templeton's official-capacity claim against Brandt in Count III. The Court **DENIES** the Motion to Dismiss as directed at all other issues in Counts I, III, IV, V, and VII.

**SO ORDERED.**

April 7, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

19